# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
### No. 20-0474V
### UNPUBLISHED

| | |
|---|---|
| ADRIANNE HICK,<br><br>      Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>      Respondent. | Chief Special Master Corcoran<br><br>Filed: May 23, 2022<br><br>Special Processing Unit (SPU);<br>Findings of Fact; Site; Onset;<br>Influenza (Flu); Shoulder Injury<br>Related to Vaccine Administration<br>(SIRVA); Table Claim Dismissal. |

*Leah VaSahnja Durant*, Law Offices of Leah V. Durant, PLLC, Washington, DC, for Petitioner.

*Zoe Wade*, U.S. Department of Justice, Washington, DC, for Respondent.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW DISMISSING TABLE CLAIM**[1]

  On April 21, 2020, Adrianne Hick filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a shoulder injury related to vaccine administration ("SIRVA") as a result of an influenza ("flu") vaccination she received on October 18, 2018. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters (the "SPU").

---

[1] Because this unpublished Ruling contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

For the reasons discussed below, I find that although there is preponderant evidence that Petitioner's flu vaccine was administered to her left arm, Petitioner's Table SIRVA claim must be dismissed because the evidentiary record does not support the conclusion that the requisite onset of her pain occurred within 48 hours following administration of the flu vaccine. This leaves a possibly-meritorious causation-in-fact claim to be adjudicated.

## I. Relevant Procedural History

After the materials filed in connection with the Petition were deemed acceptable for case activation, the matter was assigned to the SPU in May 2020. On June 3, 2021, after completing formal medical review, Respondent filed his Rule 4(c) Report contending that Petitioner had not established that (a) Petitioner's flu vaccine was administered to her left arm, and (b) onset of her shoulder pain began within 48 hours of vaccination, as required for a Table SIRVA. ECF No. 20. Rather, Respondent argued that Petitioner "has repeatedly, and consistently, reported that her symptoms began approximately two weeks after vaccination." *Id.* at 5.

After a review of the records, I determined that a hearing to resolve the disputed issues would be unnecessary. *See* ECF No. 22. I then directed the parties to file briefs and any other evidence in support of their positions. *Id.* Petitioner filed a Motion for Fact Ruling ("Mot.") on October 29, 2021, to which Respondent filed a response ("Op.") on November 12, 2021. ECF No. 24, 25. Petitioner filed a reply ("Repl.") on December 1, 2021. ECF No. 26. This matter is now ripe for adjudication.

## II. Issues

The following issues are contested: (1) whether Petitioner received the vaccination alleged as causal in her left arm; and (2) whether Petitioner's first symptom or manifestation of onset after vaccine administration (specifically pain) occurred within 48 hours as set forth in the Vaccine Injury Table and Qualifications and Aids to Interpretation ("QAI") for a Table SIRVA. 42 C.F.R. § 100.3(c)(10)(ii)-(iii) (required onset for pain listed in the QAI; pain and reduced range of motion limited to the shoulder in which the intramuscular vaccine was administered).

## III. Authority

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of

2

petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Human Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. In *Lowrie*, the special master wrote that "written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Lowrie*, at *19. And the Federal Circuit recently "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Human Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

The United States Court of Federal Claims has recognized that "medical records may be incomplete or inaccurate." *Camery v. Sec'y of Health & Human Servs.*, 42 Fed. Cl. 381, 391 (1998). The Court later outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Human Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery*, 42 Fed. Cl. at 391 (citing *Blutstein v. Sec'y of Health & Human Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Human Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Human Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly

recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] ... did in fact occur within the time period described in the Vaccine Injury Table." *Id.*

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing § 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Human Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

## IV. Findings of Fact

### A. Site of Vaccination

Based on a review of the entire record, including all medical records and affidavits, the arguments in Respondent's Rule 4(c) Report, the arguments in Petitioner's Motion for Fact Ruling, and the arguments in the response thereto, I find that Petitioner's October 18, 2018 flu vaccine was more likely than not administered in her left arm, as she contends. The following points are particularly relevant to that finding:

- Petitioner's pre-vaccination medical records reveal a history of asthma and allergies, but no injuries, inflammation, or dysfunction in either shoulder or arm. Ex. 3 at 4.

- Petitioner received the flu vaccine at the offices of her union, Actor's Equity Association, in New York, New York, on October 18, 2018. Ex.1 at 1. The vaccine record states that "there is no documentation available to confirm to which arm the vaccination was given." *Id.*

- Petitioner avers that she was asked which arm was her dominant arm prior to the vaccination. Ex. 8 at ¶3; Ex. 12 at ¶1. Petitioner states that she "answered that she was right-handed, and her left side was prepared for the injection." Ex. 8 at ¶3. She states that she then received the vaccination in her left arm. Ex. 12 at ¶1.

- Petitioner's husband, Andrew George Foote, states that he spoke to Ms. Hick by phone on the day of her vaccination and that she "explained that

4

> when the time came for her injection, she began to remove her cardigan sweater so as to better expose her left (non-dominate) [sic] shoulder." Ex. 13 at ¶5. He further recalled that Petitioner told him that "she was very relieved that the injection was in her left arm since she was on her way to the office and would probably be called upon to do some of the minor physical chores that she performs when she works at her part time office job." *Id*.

- Petitioner's co-worker, Lauren Dopkin, states that Petitioner returned to the office where they worked together on October 18, 2018 after her flu shot. Ex. 14 at ¶2. She recalled that Petitioner "was complaining of the soreness in her left shoulder from the shot, and how it caused her left arm to ache." *Id.*

- In the filed records after October 18, 2018, Petitioner consistently reported pain in her left shoulder to her chiropractor, to three orthopedists, and to her physical therapist. *See* Ex. 1 at 1-14; Ex. 4 at 4-13; Ex. 5 at 4-10; Ex. 6 at 4-7; Ex. 11 at 8. Petitioner received testing and treatment to her left shoulder, including xrays and an MRI, cortisone injections, and physical therapy. *Id.*

- The records do not contain any complaints of nor treatment for right shoulder pain.

The entirety of the record, as reviewed above, preponderantly supports the conclusion that Petitioner more likely than not received the October 18, 2018 flu vaccine in her left arm.

Ms. Hick's vaccine administration record is admittedly problematic, since it is silent as to the situs of administration. Ex. 1 at 1. Petitioner's affidavit and supplemental affidavit, however, provide additional details about the circumstances of administration that provide support for her claim that she received the vaccination in her left arm. As Petitioner has explained, she was asked to identify her dominant arm prior to vaccination. Ex. 8 at ¶3. Because her dominant arm is her right, Petitioner received the vaccine in her left arm. Ex. 12 at ¶1. Petitioner's husband recalled that Ms. Hick explained to him on the day of her vaccination that she received the vaccine in her left (non-dominant) arm and experienced immediate pain. Ex. 13 at ¶5. Petitioner's co-worker, Lauren Dopkin, worked with her on the afternoon of her vaccination and recalled Petitioner complaining of soreness in her left arm. Ex. 14 at ¶2.

Because the medical record is silent on the issue of site of vaccination, this is not a case where a testimonial assertion on the disputed fact is contradicted. While the record does not prove, by itself, that Petitioner received the vaccine in her left arm, it does not negate that conclusion either. And it is well-settled that even though "oral testimony *in conflict with* contemporaneous documentary evidence deserves little weight," that testimony can be credited where it provides detail that the record omits. *Kirby*, 997 F.3d at 1383 (emphasis added). Here, Petitioner's statements about the circumstances of vaccination do not conflict with the vaccine administration record, but provide detail that was not recorded at the time of the vaccine or for which documentary evidence cannot be obtained.

There are other reasons to conclude as I do on this question. Petitioner's medical records show that she had no history of any pain, inflammation, or dysfunction in either shoulder or arm. She received treatment only to her left shoulder, including physical examinations, xrays, cortisone injection, and physical therapy. Ex. 2, 4-6. There is no indication in the record of any other possible cause of Petitioner's left shoulder pain.

Overall, Petitioner's own assertions are sufficiently corroborated by the medical record to accept her contention of vaccine situs. At worst, this is a "close-call," but in such cases Program case law counsels deciding the matter in a petitioner's favor. *Roberts v. Sec'y of Health & Human Servs.*, No. 09-427V, 2013 WL 5314698, at *10 (Fed. Cl. Aug. 29, 2013). Accordingly, I find it more likely than not that the vaccine alleged as causal in this case was administered to Petitioner in the left shoulder/arm on October 18, 2018.

### B. Onset

I have fully reviewed the evidence pertaining to the onset question, including all medical records, Respondent's Rule 4(c) Report, and the parties' briefs. I find the following facts most relevant:

- Petitioner's pre-vaccination medical records reveal a history of asthma and allergies, but no injuries, inflammation, or dysfunction in either shoulder or arm. Ex. 3 at 4.

- Petitioner received a flu vaccine at the offices of her union, Actor's Equity Association, in New York, New York, on October 18, 2018. Ex.1 at 1. (As noted above, I have ruled that Petitioner's flu vaccine was administered to her left arm).

- Petitioner recalls that the vaccination "was very painful" and "as [she] went through the day, [she] could barely use [her] arm." Ex. 8 at ¶3-4. She stated that "the initial injection hurt so much and felt like it was very high up onto my shoulder, not in my deltoid." Ex. 12 at ¶3. She described "lasting pain, which started immediately after being injected. [She] was experiencing pain and stiffness, and [she] could no longer lift, or hold things with [her] left side." *Id.* at ¶4. She described sleeping the night of her vaccination as "impossible." *Id.*

- Petitioner's husband, Andrew George Foote, avers that Petitioner called him after her flu vaccination and "explained that the injection site was much more 'tender' and 'painful' than in previously years." Ex. 13 at ¶2.

- Petitioner's co-worker, Lauren Dopkin, recalls that Petitioner returned to the office where they both worked after her vaccination. Ex. 14 at ¶2. She stated that Petitioner complained of "soreness in her left shoulder from her shot" and "it caused her left arm to ache." *Id.* She noted that "things like lifting boxes overhead, reaching out to retrieve something, and lifting, all seemed to be painful and difficult." *Id.*

- On November 8, 2018, 21 days after her vaccination, Petitioner visited her chiropractor, Dr. Guy Guerriero, complaining of left shoulder pain. Ex. 11 at 8. But Dr. Guerriero's records do not memorialize a date of onset, nor any cause attributed by Petitioner.

- On November 13, 2018, 26 days after her vaccination, Petitioner presented to orthopedist, Dr. Mohnish Ramani, complaining of left shoulder pain present for "1 ½ weeks." Ex. 6 at 4. Dr. Ramani noted "Onset date: 11/3/2018" and that Petitioner "indicates that she possibly unknowingly stressed the left arm." *Id.* On the "New Patient Medical History Form" filled out by Petitioner on the day of her appointment, Ms. Hicks noted the onset date of her symptoms as 11/3/2018. *Id*. at 7.

- On November 21, 2018, 34 days after her vaccination, Petitioner presented to a second orthopedist, Dr. Dennis Nutini, for her left shoulder pain. Ex. 5 at 9. Dr. Nutini recorded that Petitioner "reports that three weeks ago, she started feeling pain in the left shoulder three days after a shoulder workout." *Id.*

7

- Upon starting physical therapy on December 7, 2018, Petitioner reported "that around the date of 11/3/2018 she started to notice some L shoulder discomfort w/o any MOI." Ex. 2 at 4. The physical therapist, Dr. Steven Ferro, recorded that Petitioner "notes that the pain started after reaching across her body and has continues [sic] to become more pronounced." *Id.*

- At her physical therapy treatment on December 11, 2018, Dr. Ferro noted that Petitioner "did get a flu shot a few weeks prior to her symptoms beginning and is curious if this could have contributed to her current complaint." Ex. 2 at 9.

- On March 26, 2019, Petitioner presented to a third orthopedist, Dr. Johnny Arnouk, complaining of "a dull ache to her left shoulder for the past 5 months. She states that her symptoms started shortly after receiving a flu shot." Ex. 4 at 11.

I acknowledge that the standard applied to resolving onset for an alleged Table SIRVA is liberal, and will often permit a determination in a petitioner's favor, especially in the *absence* of fairly contemporaneous and direct statements within the petitioner's medical records to the contrary. However, not every case can be so preponderantly established. Ultimately, the resolution of such fact issues involves weighing different items of evidence against the overall record.

Here, Petitioner's onset claims are offset against a record created very near-in-time to vaccination, in which Petitioner consistently reported the onset of her left shoulder pain as occurring approximately two weeks after her vaccination. Although Petitioner, her husband, and her co-worker have submitted affidavits supporting immediate onset of shoulder pain, the first three post-vaccination records (from the November 13, 2018 visit with Dr. Ramani; the November 21, 2018 visit with Dr. Nutini; and the December 7, 2018 physical therapy evaluation) specifically *refute* such contentions, placing onset instead during the period 13-16 days post vaccination. Ex. 2 at 4; Ex. 5 at 9; Ex. 6 at 4, Ex. 8, 12-14. Petitioner first linked her left shoulder pain to her flu shot at the time of her second physical therapy appointment on December 11, 2018 – but even then she stated that her pain began a few weeks after the vaccination. Ex. 2 at 9. These records, all created within the first two months after vaccination, consistently place onset of Petitioner's shoulder pain outside of the 48 hours required to establish a Table SIRVA.

Petitioner argues that the three records noted above are "inconsistent and deserving of little evidentiary weight" because they are "internally inconsistent," in that they each provide different onset dates. Repl. at 4, 8. Instead, she maintains I should give

8

greater weight to the affidavits submitted by Petitioner, her husband, and Lauren Dopkin, a co-worker, all of which place onset on the day of vaccination, plus the record of her visit to Dr. Anouk on March 26, 2019 (just over five months after her vaccination), where she mentioned that her shoulder pain began "shortly after her flu shot." Repl. at 8; Ex. 4 at 11. However, in so maintaining Petitioner seems to contend that medical records must be identical to be deemed consistent. In fact, the three records all place onset of Petitioner's pain between October 31, 2018 and November 3, 2018.[3] Ex. Ex. 2 at 4; Ex. 5 at 9; Ex. 6 at 4. Although not identical, the three records clearly place onset of Petitioner's pain significantly after the 48-hour period after her vaccination which ended after October 20, 2018. Ex. 1 at 1. They are sufficiently consistent to be given greater weight than after-the-fact witness testimony,[4] even if they *themselves* do not establish a specific date of onset.

Further, the affidavit testimony provided directly contradicts the facts recorded in the contemporaneous medical records. Petitioner stated that she "had lasting pain, which started immediately after being injected" and noted that "sleeping that first night . . . was impossible." Ex. 12 at ¶4. This statement cannot be reconciled with the contemporaneous records. On her intake form for her November 13, 2018 appointment with Dr. Ramani, Petitioner herself wrote that her symptoms began "1 ½ weeks" prior or on "11/3/2018." Ex. 6 at 4. At her November 21, 2021 appointment with Dr. Nutini, Petitioner reported that her pain began three weeks prior after a shoulder workout. Ex. 5 at 9.

There are situations in which compelling testimony may be more persuasive than written records, such as where records are deemed to be incomplete or inaccurate. *Campbell v. Sec'y of Health & Human Servs.*, 69 Fed. Cl. 775, 779 (2006) ("like any norm based upon common sense and experience, this rule should not be treated as an absolute and must yield where the factual predicates for its application are weak or lacking"); *Lowrie v. Sec'y of Health & Human Servs.*, No. 03-1585V, 2005 WL 6117475, at *19 (Fed. Cl. Spec. Mstr. Dec. 12, 2005) ("[w]ritten records which are, themselves, inconsistent,

---

[3] The record of November 13, 2018, notes both "1 ½ weeks" prior to the appointment, which would have been 10 or 11 days prior (November 2 or 3), and November 3, 2018 specifically. Ex. 6 at 4. The record of November 21, 2018 notes "three weeks," which would have been around October 31, 2018. Ex. 5 at 9.

[4] While such after-the-fact statements can be deemed persuasive (especially to the extent they do not contradict prior record statements), they inherently are somewhat less probative than contemporaneous evidence. *Sanchez v. Sec'y of Health & Human Servs.*, No. 11-685 V, 2013 WL 1880825, at *2 (Fed. Cl. Spec. Mstr. Apr. 10, 2013), *vacated on other grounds, Sanchez by & through Sanchez v. Sec'y of Health & Human Servs.*, No. 2019-1753, 2020 WL 1685554 (Fed. Cir. Apr. 7, 2020) (presumption that contemporaneous records are usually more probative than after-the-fact witness statements "is based on the linked propositions that (i) sick people visit medical professionals; (ii) sick people honestly report their health problems to those professionals; and (iii) medical professionals record what they are told or observe when examining their patients in as accurate a manner as possible, so that they are aware of enough relevant facts to make appropriate treatment decisions").

should be accorded less deference than those which are internally consistent") (*quoting Murphy v. Sec'y of Health & Human Servs*., 23 Cl. Ct. 726, 733 (1991), *aff'd per curiam*, 968 F.2d 1226 (Fed. Cir. 1992)). But not every SIRVA claim can be so preponderantly established, and certainly not where the sequential and contemporaneous record does not lend support to the Petitioner's allegations.

Petitioner argues that she has provided "a credible explanation as to why she was unable to list the date of onset with specificity during her early treatment visits – she "had no idea that her October 18, 2018, flu vaccine could be the root of her lingering pain." Repl. at 5. She argues that she "stopped using her left arm due to the pain" which helped for a while, but then the pain returned, and that Petitioner reported the date the pain returned as the onset date to her doctors, rather than the date of her vaccination. *Id.* Petitioner also notes that she believed her pain would go away with time (and that "people kept telling [her] that flu shots could hurt for a while),"  as many petitioners believe. Ex. 12 at ¶5. However, as Respondent notes, "not knowing the cause of one's pain, or believing that one's pain will eventually go away on its own, does not translate into a lack of awareness of when that pain started." Op. at 5. Further, even when Petitioner first linked her pain to her flu shot, she continued to report that the pain began "a few weeks" after her vaccination. Ex. 2 at 9.

Accordingly, I find Petitioner has not preponderantly established that onset of her pain occurred within 48 hours of vaccination – meaning that she cannot proceed in this action with a Table SIRVA claim. Petitioner has, however, a potential causation-in-fact injury claim (since the record *does* at least support the conclusion that within two weeks of vaccination she felt shoulder pain). I urge the parties to make one final brief attempt at settlement before transferring the case.

## V.     Conclusion

Petitioner's Table SIRVA claim is dismissed, for the reasons set forth above. **Petitioner shall file a joint status report addressing her conveyance of a revised settlement demand for an off-Table claim, and the parties' efforts towards informal resolution, by no later than <u>Friday, July 1, 2022</u>.** If the parties do not report progress in their efforts, the matter will likely be transferred out of the SPU.

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master
